THE OCEAN.

(District Court, S. D. New York. April 2, 1902.)

COLLISION—STEAM VESSELS CROSSING—VIOLATION OF RULES.

A tug, with two scows in tow, was passing down East river on a course somewhat toward the Brooklyn shore, when she met the steamship Ocean coming up on a crossing course, so that the crossing involved danger of collision. The tug having the Ocean on her starboard side, it became her duty, under articles 19, 22, and 23 of the navigation rules, to keep out of the way, to avoid crossing ahead, and to slacken her speed or stop and reverse. The Ocean gave a signal of one whistle, which the tug answered by a cross signal, and starboarded in an attempt to cross ahead. At a second cross signal the Ocean stopped and reversed, but too late to avoid collision with one of the scows. *Held,* that the tug was primarily in fault for violation of the rules, but that the Ocean was also in default because, under the special circumstances of the case, it was made her duty, by articles 27 and 29, to stop and reverse at once, on receiving the first cross signal.[1]

In Admiralty. Suit for collision.

John F. Foley, for libelants.
Wing, Putnam & Burlingham, for claimant.

ADAMS, District Judge. On the 19th day of June, 1901, the tug Annie L. took in tow at Port Washington, Long Island, the scow Dandy and another scow, both loaded with sand, to be towed to the foot of Ninety-Eighth street, North river. The Dandy was on a hawser about 25 or 30 fathoms astern of the tug, and the other scow was a short distance behind the Dandy. As the tow approached the Brooklyn Bridge, between 4 and 5 o'clock in the afternoon, the Ocean, an ocean-going steamer of about 300 feet in length, was seen approaching from a point about a half of a mile below the bridge. She was bound, under her own steam, for North Tenth street, Brooklyn, and was accompanied by two tugs, which were attending her for the purpose of docking her when she reached the pier. The tide was ebb, the wind light, and the weather clear. A collision occurred a little below the bridge between the Ocean and the Dandy, by which the latter was overturned and considerably injured, and the master, it is alleged, lost some personal effects. This action was brought by the libelants, who owned both the tug and the scow, to recover their damages. The master of the scow joined in the libel.

The Annie L. alleges that when she was somewhat above the bridge, on the Brooklyn side of the middle of the river, the Ocean was seen about opposite Pier 10, on the Manhattan side, coming straight up the river, showing her starboard side to the Annie L., which was then showing her starboard side to the Ocean; that she blew a signal of two whistles to the Ocean, to which the Ocean paid no attention, but came on the same course and at the same speed; that the Annie L. kept on until about under the bridge, when she again blew a similar signal to the Ocean, to which no attention was paid, and the Ocean gradually headed towards the Brooklyn shore

[1] Collision rules, see notes to The Niagara, 28 C. C. A. 532; The Mount Hope, 29 C. C. A. 368.

to cross the bow of the Annie L., with the result that she struck the scow, with the consequence stated.

The Ocean alleges that she was proceeding slowly up the river, somewhat on the Brooklyn side, on a course parallel with the shore, when the Annie L. and tow were seen three or four points on her port bow; that a tug, with several schooners in tow, was coming down nearly head and head with the Ocean, and the Ocean signaled her, with a single blast, that she would pass to the right; that the Annie L., instead of passing the same way, headed more towards the Brooklyn shore, whereupon the Ocean gave her a signal of one blast, to which the Annie L. replied with a signal of two blasts, and the Ocean then reversed her engines full speed, but the Annie L., crossing the Ocean's bow herself, brought the scow into collision, the ebb tide setting her down so that the starboard side of the scow came in contact with the Ocean's stem.

A number of witnesses were examined on each side, and there is much contradiction with respect to the positions of the respective vessels and their signals. Out of the confusion I gather the following material facts: The Annie L., with her tow, was near the middle of the river above the bridge, but rather on the Manhattan side. Though bound down the river, she was headed towards the Brooklyn shore. Another tug, the Peck, belonging to the libelant, and having a tow similar to the Annie L.'s, was just behind the Annie L.'s tow and a little nearer the Brooklyn shore. Another tug, the Gypsum King, with a tow of two schooners and a barge abreast on a hawser, which had come from Nova Scotia by way of Long Island Sound, bound to Staten Island, was also behind the Annie L. and her tow, somewhat nearer the Brooklyn shore than the Peck and tow. The Ocean at this time was coming up the river, somewhat on the Brooklyn side of the middle, about head and head with the Gypsum King, and having the Peck and the Annie L. a little on her own port bow, the respective positions being such that it was the duty of the tugs and the Ocean to pass to the right of each other. While in this position the Ocean blew a signal of one blast, which the Gypsum King, after waiting for the Annie L. to answer as the head vessel, answered with a similar signal. The Ocean then ported a little. After this exchange of signals, the Annie L. blew a signal of two blasts to the Ocean, and starboarded her wheel, without waiting for an answer, which was shortly given by the Ocean in a signal of one blast. Shortly after her signal, the Annie L., having then changed her position somewhat towards the Brooklyn shore, and broadened her heading across the bow of the Ocean, blew the Ocean another signal of two whistles. The Ocean answered this signal with a signal of one blast, and stopped and reversed, but too late to avoid the collision. In the meantime the Peck, which, according to her account, had given a signal of two blasts to the Ocean, seeing that there was going to be a collision between the Ocean and the scow in tow of the Annie L., hauled off to the starboard, and passed the Ocean on the Manhattan side. The Gypsum King, however, owing to the position of the Annie L. between her and the Ocean, was unable to comply with the signal she had exchanged

with the Ocean, and compelled to turn towards the Brooklyn shore. The collision happened probably 800 or 900 feet below the bridge, and about 600 feet from the Brooklyn shore.

It is evident, upon the mere statement of the facts, that the Annie L. was primarily in fault for the collision. She had the Ocean on her own starboard side, and, in view of her attempted maneuver, the vessels were crossing so as to involve risk of collision. It was her duty to keep out of the way of the Ocean (Supp. Rev. St. c. 4, art. 19), to avoid crossing ahead of the Ocean (Id. art. 22), and to slacken her speed or stop or reverse (Id. art. 23). She acted in direct violation of these rules, and the collision resulted.

The only question in the case about which there can be any doubt is whether the Ocean was also guilty of a fault which contributed to the collision. If she had stopped a little sooner than she did, the slight headway which she had at the time of the collision would have been overcome, and collision would certainly have been avoided. I do not see how she can escape being implicated in the matter upon her own testimony. The pilot in charge of her navigation testifies that he received the cross reply from the Annie L. to his first signal of one blast, which he said was designed principally for the Gypsum King, as she was in a position to require such a signal, but that it was also intended as a notification to the Annie L. that he was directing his course to the right. The Annie L.'s first signal indicated that she intended to cross the Ocean's bow, and he said that, both before and after the signal, the Annie L. was acting in pursuance of such intention, yet he did nothing to arrest the headway of his vessel until he heard the second signal of two blasts. He said that he first thought there was danger of collision "when the Annie L. blowed her two whistles the last time, seeing that she was determined to cross me," but he was not justified in waiting until that time for precautionary action under the rules. There was risk of collision when the Annie L. crossed the first signal and kept on. That was the time for the Ocean to have stopped and reversed (The Columbia, 23 Blatchf. 268, 25 Fed. 844), especially as the compass bearing of the Annie L. had not changed to the Ocean, and risk of collision then existed under the preliminary rule. This case is distinguishable from The Delaware, 161 U. S. 459, 16 Sup. Ct. 516, 40 L. Ed. 771, a case under rules 19 and 23 of the act of 1885, where it was held that the privileged vessel was not in fault for failing to stop and reverse, in the absence of notice from the burdened vessel that she intended to depart from the governing rule. Here there was such notice. As to the Ocean, the situation was governed by Supp. Rev. St. c. 4, art. 27, requiring her to depart from article 21 in order to avoid immediate danger, and by article 29, requiring her not to neglect any precaution rendered necessary by the special circumstances of the case.

The libelants Murray and Reid, being the owners of the tug and tow, are entitled to half damages. The libelant Johnson, who did not participate in the navigation, was not in fault, and is entitled to full damages.

Decree accordingly, with an order of reference.